United States District Court
Southern District of Texas
**ENTERED**
December 13, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| ROBERT MEZA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:22-cv-00383 |
| | § | |
| MONTE ALTO INDEPENDENT | § | |
| SCHOOL DISTRICT and ROSALINDA | § | |
| COBARRUBIAS, as former | § | |
| Superintendent, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

The Court now considers "Defendant Monte Alto Independent School District's Motion for Summary Judgment"[1] and "Defendant Rosalinda Cobarrubias' Motion for Summary Judgment."[2] Plaintiff has timely filed a response to each motion rendering the motions ripe for the Court's consideration. The Court after duly considering the motions, the record, and the relevant authorities, **GRANTS** Defendants' motions.

### I. FACTUAL AND PROCEDURAL HISTORY

This is a suit brought under 42 U.S.C. § 1983. Plaintiff was hired in 2018 by Defendant Monte Alto Independent School District ("Monte Alto ISD") as its athletic director and head varsity football coach.[3] Plaintiff alleges that in 2019, he became aware of voting irregularities involving the Monte Alto ISD board president, and he made a written complaint to the Texas

---

[1] Dkt. No. 19.
[2] Dkt. No. 20.
[3] Dkt. No. 1 at 2, ¶ 7.

Secretary of State in January 2020.[4] He received a response in February 2020 that the complaint was being forwarded to the Attorney General for a criminal investigation.[5]

In September 2020 Plaintiff, via a letter, made Defendant Cobarrubias, the school superintendent, aware of his complaint to the Texas Secretary of State.[6] Plaintiff alleges that shortly thereafter, Defendant Cobarrubias (1) apprised the school board of Plaintiff's complaint to the Texas Secretary of State, and (2) began to allege that she received complaints about vitamin supplements being distributed to students in the football program.[7] Defendants employed a law firm to investigate the supplement distribution, and Plaintiff received adverse employment action in November 2020, being reassigned as a classroom teacher and losing his athletic director stipend.[8] Despite Plaintiff's appeal and later application to be rehired, he has not been reinstated to the position of athletic director and head varsity football coach.[9]

Plaintiff filed suit on November 4, 2022, alleging that Defendants retaliated against him for exercising his First Amendment right to make a complaint about potential voter fraud.[10] Defendants now move for summary judgment.

## II. DISCUSSION

### a. Legal Standard

Federal Rule of Civil Procedure 56 provides that a court has the ability to grant summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[11] The primary purpose of summary judgment "is to isolate and

---

[4] *Id.* at 2-3, ¶¶ 8-10.
[5] *Id.* ¶ 10.
[6] *Id.* at 3-4, ¶¶ 10-11.
[7] *Id.* ¶ 12.
[8] *Id.* at 5-6, ¶ 13.
[9] Dkt. No. 1 at 6-7, ¶¶ 14-15.
[10] *Id.*
[11] FED. R. CIV. P. 56(a); *see Bulko v. Morgan Stanley DW Inc.*, 450 F.3d 622, 624 (5th Cir. 2006).

dispose of factually unsupported claims or defenses" and should be interpreted to accomplish this purpose.[12]

     To earn summary judgment, the movant must demonstrate that there are no disputes in regard to genuine and material facts and that the movant is entitled to summary judgment as a matter of law.[13] "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor."[14] The movant "bears the initial burden of . . . demonstrat[ing] the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case."[15] In other words, a movant may satisfy its burden by pointing out the absence of evidence to support the nonmovant's case if the nonmovant would bear the burden of proof with respect to that element at trial.[16] To demonstrate the absence of a genuine dispute of material fact, the movant must point to competent evidence in the record, such as documents, affidavits, and deposition testimony[17] and must "articulate precisely how this evidence supports his claim,"[18] to "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

---

[12] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[13] *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993).

[14] *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986), *quoted in Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002); *accord Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 241 (5th Cir. 2006) (holding that, if the movant intends to rely on an affirmative defense, "it must establish beyond dispute all of the defense's essential elements").

[15] *Lynch Props. v. Potomac Ins. Co., 140 F.3d 622, 625* (5th Cir. 1998).

[16] *Celotex Corp.*, 477 U.S. at 325; *see Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quotation omitted) ("Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial.").

[17] FED. R. CIV. P. 56(c)(1); *see Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quotation omitted) ("The movant . . . must identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.").

[18] *RSR Corp. v. Int'l Ins. Co.,* 612 F.3d 851, 857 (5th Cir. 2010).

3 / 18

of law."[19] If the movant fails to meet its initial burden, the motions for summary judgment "must be denied, regardless of the nonmovant's response."[20] Accordingly, the Court may not enter summary judgment by default,[21] but may accept a movant's facts as undisputed if they are unopposed.[22]

If the movant meets its initial burden, the nonmovant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts" that demonstrate the existence of a genuine issue for trial.[23] The nonmovant's demonstration cannot consist solely of "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation"[24] and a "mere scintilla of evidence" also will not do.[25] Even if the nonmovant produces more than a scintilla of evidence in its favor, such evidence may be "so overwhelmed by contrary proof" that summary judgment is still proper in favor of the movant.[26] The Court does not need to "credit evidence that is 'blatantly contradicted by the record,' especially by video or photographic evidence."[27] Neither self-serving allegations nor conclusory affidavits can defeat a motion for summary judgment supported by

[19] *Celotex Corp.*, 477 U.S. at 322 (quoting FED. R. CIV. P. 56(c)).

[20] *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quotation omitted).

[21] *Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).

[22] *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *see* LR7.4 ("Failure to respond to a motion will be taken as a representation of no opposition")

[23] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) ("[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."); *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991) ("[T]he party responding to a summary judgment motion must support her response with specific, non-conclusory affidavits or other competent summary judgment evidence.").

[24] *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (quoting *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)).

[25] *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010); *accord Germain v. US Bank Nat'l Ass'n*, 920 F.3d 269, 272 (5th Cir. 2019).

[26] *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996) (quoting Neely v. *Delta Brick and Tile Co.*, 817 F.2d 1224, 1226 (5th Cir. 1987)), *abrogated on other grounds by Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000).

[27] *Malbrough v. Stelly*, 814 F. App'x 798, 804 (5th Cir. 2020) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

probative evidence.[28] "[T]he nonmoving party must adduce evidence sufficient to support a jury

verdict."[29] The Court will countenance only reasonable inferences in the nonmovant's favor and

will not indulge "senseless" theories or leaps in logic.[30] The nonmovant is "required to identify

specific evidence in the record and to articulate the precise manner in which that evidence supports

his or her claim."[31] "A failure on the part of the nonmoving party to offer proof concerning an

essential element of its case necessarily renders all other facts immaterial and mandates a finding

that no genuine issue of fact exists."[32] Courts "will not assume 'in the absence of any proof . . .

that the nonmoving party could or would prove the necessary facts,' and will grant summary

judgment 'in any case where critical evidence is so weak or tenuous on an essential fact that it

could not support a judgment in favor of the nonmovant.'"[33]  The Court is under no duty to sift

through the entire record in search of evidence to support the nonmovant's opposition to summary

judgment.[34]

"A fact is 'material' if its resolution could affect the outcome of the action,"[35] while a

"genuine" dispute is present "only if a reasonable jury could return a verdict for the non-movant."[36]

---

[28] *Koerner v. CMR Constr. & Roofing, L.L.C.*, 910 F.3d 221, 227 (5th Cir. 2018); *see Cadena v. El Paso County*, 946 F.3d 717, 725 (5th Cir. 2020) ("[A]ffidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment.").

[29] *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[30] *See Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 468–69 & n.14 (1992).

[31] *Ragas*, 136 F.3d at 458 (emphasis added).

[32] *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006); *see Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quotation and alteration omitted) ("When the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case."); *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992) ("To avoid a summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case.").

[33] *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

[34] *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996); *accord Adams Family Tr. v. John Hancock Life Ins. Co.*, 424 F. App'x 377, 380 n.2 (5th Cir. 2011).

[35] *Burrell v. Dr. Pepper/Seven UP Bottling Grp.*, 482 F.3d 408, 411 (5th Cir. 2007).

[36] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006); *see Bache v. Am. Tel. & Tel. Co.*, 840 F.2d 283, 287 (5th Cir. 1988) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) ("[T]o determine if an issue of material fact is genuine, we must then decide whether 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'").

As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[37] "Although this is an exacting standard, summary judgment is appropriate where the only issue before the court is a pure question of law."[38] The Court does not weigh the evidence or evaluate the credibility of witnesses and views all facts and inferences in the light most favorable to the nonmovant,[39] including "resolv[ing] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[40]

**b. Analysis**

A number of the arguments raised in Defendant Monte Alto ISD's and Defendant Rosalinda Cobarrubias' motions are duplicative and thus the Court addresses those arguments together. Where the issues only pertain to one Defendant or the other, the Court will note that it is addressing an argument raised by that particular Defendant.

*1. Plaintiff's First Amendment cause of action*

"To establish a § 1983 claim for employment retaliation related to speech, a plaintiff employee must show: (1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action."[41]

Both Defendant Monte Alto ISD and Defendant Rosalinda Cobarrubias argue that Plaintiff has failed to provide evidence that satisfies elements two and four of his claim and thus that the Court should grant summary judgment.

---

[37] *Anderson,* 477 U.S. at 248.
[38] *Sheline v. Dun & Bradstreet Corp.,* 948 F.2d 174, 176 (5th Cir. 1991).
[39] Williams v. Time Warner Operation, Inc., 98 F.3d 179, 181 (5th Cir. 1996).
[40] *Boudreaux,* 402 F.3d at 540.
[41] *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007) (internal citations and quotations removed).

i. *Citizen on a matter of public concern*

The First Amendment protects a public employee's speech in cases of alleged retaliation only if the speech addresses a matter of public concern. Whether speech is of public concern is determined by the content, form, and context of a given statement, as revealed by the whole record. Because almost anything that occurs within a public agency could be of concern to the public, we do not focus on the inherent interest or importance of the matters discussed by the employee. Rather than looking at whether the public might or would have an interest in the matter, the court examines whether the **speaker's motivation was to speak primarily as a citizen or as an employee**. In cases of mixed speech or motives, the speaker must have spoken predominantly 'as a citizen' to trigger First Amendment protection. If the speech is not of public concern, we do not question the employer's motivations for taking action against the employee.[42]

Defendants argue that "when Plaintiff informed [Defendant Cobarrubias] of his election complaint in the letter asking to not have to teach to earn his income, his motivation was to speak solely as an employee and therefore his speech would not be protected under the First Amendment."[43]

Plaintiff argues in response that "through misapplied logic Defendant Cobarrubias asserts that the letter provided to her on September 21, 2020, was regarding Defendant's employment and not a matter of public concern. Plaintiff's job description does not list making criminal reports regarding voter fraud against a school board member."[44]

Here, both sides use misapplied logic. First, the complaint to the Secretary of State about voting irregularities was clearly on a matter of public concern and appears to have been motivated by Plaintiff's status as a citizen. Second, Plaintiff's letter to Defendant Cobarrubias was clearly speech motivated by Plaintiff as an employee even if he there revealed his earlier complaint to the Secretary of State. Plaintiff does appear to be providing some context to Defendant Cobarrubias as to why "the school board president Connie Villanueva, and school board member Armando

---

[42] *Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.*, 635 F.3d 685, 692 (5th Cir. 2011) (emphasis added).
[43] Dkt. Nos. 19 at 9 & 20 at 8.
[44] Dkt. Nos. 21 at 10, ¶ 11 & 22 at 10, ¶ 11.

Lopez had come to [him] with the request that [he] be given additional responsibilities."[45] As Plaintiff states himself, only at that point does Defendant Cobarrubias have knowledge of the underlying election complaint and Plaintiff provides that information with a "request that [Defendant Cobarrubias] hire another mathematics teacher . . . ."[46] Thus, while Defendant Cobarrubias may only then have learned of the Secretary of State complaint, there is some inference that the school board members may have earlier been aware of such. Nonetheless, the speech at issue here is not the letter to Defendant Cobarrubias, but the complaint to the Secretary of State. Plaintiff's speech is protected, even if Defendants did not learn of that speech until the September 2020 letter. The issue then is whether this recently gained knowledge of clearly protected speech precipitated the adverse employment action. However, before addressing that issue, the Court first considers whether Plaintiff suffered an adverse employment action.

## ii.    *Adverse Employment Action*

"To establish a First Amendment violation, a public employee must demonstrate that [he] has suffered an adverse employment action for exercising [his] right to free speech."[47] "Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands."[48] "Transfers can constitute adverse employment actions if they are sufficiently punitive, or if the new job is markedly less prestigious and less interesting than the old one."[49] "[I]n the education context, [the Fifth Circuit] has held that decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures, while extremely

---

[45] Dkt. No. 19-4 at 1.

[46] *Id.* at 1.

[47] *Pierce v. Texas Dep't of Crim. Just., Institutional Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994) (citing *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994).

[48] *Id.* (citing *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994) (citing *Rutan v. Republican Party*, 497 U.S. 62, 74, 110 S.Ct. 2729, 2737, 111 L.Ed. 2d 52 (1990)).

[49] *Breaux v. City of Garland*, 205 F.3d 150 (5th Cir. 2000)(citing *Pierce*, 37 F.3d at 1149).

important to the person who dedicated his or her life to teaching, do not rise to the level of a constitutional deprivation."[50]

Neither side addresses the issue of whether an adverse employment action did in fact occur with any particularity. Nonetheless, the Court addresses the matter with the evidence presented. On November 30, 2020, Defendant Cobarrubias sent Plaintiff Meza the following letter:[51]



**Dr. Rosie Cobarrubias,** *Superintendent of Schools*

25149 1ˢᵗ Street      Monte Alto, Texas 75538      rosiecobarrubias@montealtoisd.org

To:   Robert Meza, Athletic Director
From: Dr. Rosalinda Cobarrubias, Superintendent of Schools
Date:   November 30, 2020
Subject: New Assignments

Dear Mr. Meza,

As per Board Policy DK (LOCAL), "All personnel are employed subject to assignment and reassignment by the Superintendent or designee when the Superintendent determines that the assignment or reassignment is in the best interest of the District." Furthermore, Board Policy DEAA(local) authorizes the Superintendent to assign non-contractual supplemental duties. Therefore, in the best interest of the District, you are hereby notified that you will no longer be serving as the District's Athletic Director or Head Football Coach. Furthermore, while your base-salary will not be affected, your stipends will be adjusted accordingly. Please see below:

    Athletic Director          $          6,000.00

Your employee leave and benefits are not affected in any way.  If you have any questions, please do not hesitate to contact Legal Counsel at eramirez@808west.com.

Respectfully,

*R. Cobarrubias*

Dr. Rosalinda Cobarrubias,
Superintendent of Schools

---

[50] *Id.* (citing *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (quoting *Dorsett v. Board of Trustees*, 940 F.2d 121, 123 (5th Cir. 1991)).
[51] Dkt. No. 19-8.

As previously mentioned, the Fifth Circuit has held that teaching assignments do not rise to the level of a constitutional deprivation.[52] But, even though Defendant Cobarrubias characterizes the subject of the letter "New Assignments," Plaintiff Meza retained his teaching assignment. In this action, the loss of the positions of Athletic Director and Head Football Coach are at issue, not the retaining of the teaching assignment. True, Plaintiff Meza previously requested that Defendant Cobarrubias "hire another mathematics teacher . . . ."[53] However, that is of no significance here because, again, Plaintiff Meza did not even lose his teaching job. Instead, he was discharged from his positions as the District's Athletic Director and Head Football Coach, which he did not request. Not only did he lose a prestigious role within the community, but he lost his $6,000.00 stipend. Thus, the Court finds that a reasonable jury could very well find that an adverse employment action occurred here.

### iii.   Speech precipitating the adverse employment action

The First Amendment protects a public employee's speech in cases of alleged retaliation only if the speech precipitated the adverse employment action.

> [A] plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury. It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury. Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.[54]

Defendants argue that,

> Plaintiff informed the Superintendent that he had filed an election fraud complaint on September 21, 2020. (Exhibit D). Plaintiff has not alleged that any adverse action was taken against him until his duties of Athletic Director/Head Coach were taken away from him on November 30, 2020, over two months later. (Exhibit H). Incorporating the facts above, what the evidence makes clear beyond any doubt was that just prior to Plaintiff losing his position as Athletic Director / Head Coach, it

---

[52] *Supra* note 50.
[53] *Id.* at 1.
[54] *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722, 204 L. Ed. 2d 1 (2019) (citing *Hartman v. Moore*, 547 U.S. 250, 256, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006)).

was determined that student athletes were given supplements in violation of the school district's policy, that Plaintiff knew about the supplements, that Plaintiff himself was giving students the supplements, and a parent complained. (Exhibit G; Exhibit E Pg. 20 Ln 15 – Pg. 27 Ln. 6; Exhibit E - Pg. 30 Ln. 3 – Pg. 31 Ln. 15). It would be unreasonable and irrational for Plaintiff to argue that a Superintendent would be prevented from taking remedial action when she is presented with undeniable evidence that district policies were violated because nearly two months prior she had been told that an election complaint had been filed. Further, the remedial action taken by the Superintendent was only related to the duties surrounding the student athletes, which is exactly what the parent complaint dealt with. (Exhibit G & H). Additionally, Plaintiff himself testified that the District paid his full salary including all the stipends for the entire year even though he was removed from the Athletic Director / Head Coach position. (Exhibit E – Pg. 45 Ln. 15 – Pg. 46 Ln. 6). In other words, Plaintiff did not lose any income for his contract year, he was only removed from duties that dealt directly with the issue presented. The District even offered Plaintiff a new teaching contract for the following school year, which he accepted, but then Plaintiff resigned before the new school year started. (Exhibit E – Pg. 51 Ln. 16 – Pg. 54 Ln. 2).[55]

Defendants also point out that in the letter sent to Defendant Cobarrubias, Plaintiff states that he "cannot be in the classroom and do the work of an Athletic Director, and Head Football Coach."[56] Defendants argue that this "itself would reasonably justify taking action to remove some duties of Plaintiff regardless of the fact that he told the Superintending of his election complaint.[57] While the Court agrees that Plaintiff's letter would reasonably justify Defendants' action to remove some of Plaintiff's duties, the Court notes that Plaintiff did request a new math teacher to be hired so that he could "devote all [his] energies [sic] at being a good Athletic Director for the school district."[58]

Plaintiff argues that Defendant Cobarrubias "admitted that at no time was she provided the written investigative report from investigator/attorney Eden Ramriez to review prior to her leaving

---

[55] Dkt. Nos. 19 at 11, ¶ 17 & 20 at 10, ¶ 17.
[56] Dkt. No. 19-4 at 1.
[57] Id.
[58] Id. at 2.

employment with Defendant. In fact, Defendant Cobarrubias has no explanation why" no policy

violation was written on the letter dated November 30, 2020, signed by her that demoted Meza. [59]

However, Defendants point out that,

> [t]he confusion on whether the Superintendent saw the final report or was simply
> advised of its contents does not change the fact that Superintendent already
> indisputably knew what had occurred because Plaintiff himself admitted it to her.
> Recall that Defendant presented sworn testimony from Plaintiff wherein Plaintiff
> testified that Superintendent Cobarrubias told him that a parent made a complaint;
> that he confirmed to the Superintendent that supplements were being given to the
> students by himself, other coaches and the trainer; and that the Superintendent told
> him to stop giving supplements to the students.[60]

Plaintiff also asserts that the lack of temporal proximity of the retaliation to the letter is of

no consequence. The Court agrees with that point that the two months that had transpired between

the letter from Plaintiff and the alleged retaliation does not rule out the possibility of a causal

connection.

However, the fact of the parent complaint and Plaintiff's knowledge and participation in

the giving of pills to students is of consequence. Plaintiff's deposition has been provided for the

Court's review. The Court reproduces the relevant parts here:

> Q. Did [the Superintendent] tell you anything about a parent complaint?
> A. She might have mentioned something about that, about -- about pills or
> something, but gave her the form and that's it.
> Q. Did she ever ask you about whether or not students were receiving some type of
> supplement?
> A. I believe so.
> Q. And what did you tell her?
> A. Yes.
> Q. Okay. Did you -- did you give her any other explanation other than telling her
> yes?
> A. No.
> Q. Did she ask you for any more details?
> A. I can't recall.
> Q. Did you tell her anything about the supplement or about who was administering
> the supplement?

---

[59] Dkt. No. 21 at 15, ¶ 21.
[60] Dkt. Nos. 23 at 2, ¶ 3 & 24 at 2, ¶ 3.

A. It was a trainer.
Q. Did you tell her?
A. Yes.
Q. Did you tell her that you and the other coaches were also administering the supplements?
A. She knew. Yes.
Q. How did she know?
A. Because we -- we -- I told her.
Q. Okay. At any point, did you ever stop giving supplements to children?
A. Yes.
Q. When?
A. When she said so.
Q. When was that?
A. I guess after that meeting. I believe so.
Q. Did you instruct anyone else to stop?
A. I instructed – the trainer. I told him what happened, and I guess she talked to him, too, and we can't give the supplements out anymore.[61]

Common sense dictates that an athletic director with knowledge that supplements were being given to students without parental consent would be subject to an adverse employment action independent of any prior actions such as the protected speech that occurred here. To reinforce what most would consider a given notion, district policy stated that "[n]o employee shall give any student prescription medication, non-prescription medication, herbal substances, anabolic steroids, or dietary supplements of any type . . ." except as provided in limited circumstances such as when parental consent has been given. [62] Violating such policy almost mandates removal from the position that set the stage for that violation.

Again, the timing of the events is significant when considering the interplay of the initial complaint to the Texas Secretary of State, Plaintiff's letter to the superintendent, the parental complaint, and the adverse action. In early January 2020, Plaintiff makes a written complaint to the Texas Secretary of State.[63] Then, on September 21, 2020, Plaintiff writes the email notifying

---

[61] Dkt. No. 19-5 at 13
[62] Dkt. No. 19-7 at 4.
[63] Dkt. No. 1 at 3.

Defendant Cobarrubias of the written complaint.[64] It is clear that the letter is in response to a conversation about the additional math assignment duties.[65] That same day Defendant Cobarrubias responds stating that "[a]s indicated in your letter, my decision to assign you teaching duties was made prior to having any knowledge of what you may have filed with election authorities. Your classroom assignments were made because we needed a certified mathematics teacher, and you are certified. Your request for reassignment is denied."[66] On October 27, 2020, a guardian of a student athlete reached out to Defendant Cobarrubias and the School Principal alleging that the student received supplements and vitamins administered by Plaintiff.[67] On November 30, 2020, Plaintiff receives notice that he "will no longer be serving as the District's Athletic Director or Head Football Coach."[68]

The intervening parental complaint destroys the alleged causal link between the written complaint to the Texas Secretary of State and the adverse action. Plaintiff has provided no evidence that the adverse action would not have been taken but for the written complaint to the Texas Secretary of State. The intervening parental complaint that supplements were being given to students and Plaintiff's admitted knowledge and participation in this policy violation make clear that Defendants would have removed Plaintiff as Athletic Director regardless of his earlier speech.

### 2. *Defendant Monte Alto ISD's Municipal Liability*

A municipality cannot be held liable under § 1983 on a theory of respondeat superior. To establish municipal liability pursuant to § 1983, a plaintiff must demonstrate three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom. An official policy must be either unconstitutional or have been adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result. Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely an

---

[64] *Id.*

[65] *Id.*

[66] Dkt. No. 19-6 at 1.

[67] Dkt. No. 19-7.

[68] Dkt. No. 19-8.

unintentionally negligent oversight. These requirements must not be diluted, for where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.[69]

Thus, "to prevail against a public school district, a plaintiff must show that the *district's final policymaker* acted with deliberate indifference in maintaining an unconstitutional policy that caused the plaintiff's injury."[70] "[W]hether an official had final policymaking authority is a question of state law. And Texas law is clear that final policymaking authority in an independent school district ... rests with the district's board of trustees."[71]

Defendant Monte Alto ISD first argues that Plaintiff has not established a constitutional violation.[72] As the Court previously found, Plaintiff has failed to show that the speech precipitated the adverse employment action. Thus, Plaintiff cannot establish that there has been a violation of constitutional rights.

Nonetheless, Defendant Monte Alto ISD also argues that Plaintiff has not established that Mote Alto ISD adopted a policy that was the moving force behind the alleged constitutional violation.[73] Defendant states that "[t]he only policy alleged by Plaintiff with regard to Defendant Monte Alto ISD was, 'The School Board defendant adopted the decision made by Superintendent designee Zapeda, as its own by taking no action, and left the decision by Zepeda to remain in effect, thus adopting the decision of the superintendent as policy.'"[74] The "policy" referenced here is the ultimate decision to remove Plaintiff as Athletic Director and Head Coach but to prevail,

---

[69] *Shumpert v. City of Tupelo*, 905 F.3d 310 (5th Cir. 2018), as revised (Sept. 25, 2018) (internal citations and quotations omitted).
[70] *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 365 (5th Cir. 2020) (internal citations and quotations omitted) (emphasis added).
[71] *Id.*
[72] Dkt. No. 19 at 13.
[73] *Id.* at 14, ¶ 24..
[74] *Id.* (citing Dkt. No. 19-1 at 6, ¶ 14).

Plaintiff must present evidence of a policy that led to the ultimate decision. In the absence of an official policy, there can be no municipal liability.

### 3. Failure to Rehire

Defendants argue that Plaintiff has not provided evidence that the Monte Alto Board of Trustees nor Defendant Cobarrubias had any authority with regard to Plaintiff being reassigned to the position of Athletic Director/Head Coach once the title had been removed.[75] First Defendants assert that under Texas Education Code, "it is the duty of the Superintendent to assume administrative authority and responsibility for the assignment, supervision, and evaluation of all personnel of the district with the exception of the superintendent and principals."[76] Plaintiff reapplied for Athletic Director/Head Coach position in April 2021 when "the Superintendent at the time was Dr. Rodriguez and that Connie Villanueva was no longer on the board."[77]

Because it is the duty of the Superintendent to rehire, the claim of failure to rehire cannot survive against Defendant Monte Alto ISD. Likewise, because Defendant Cobarrubias was not the Superintendent at the time Plaintiff requested to be reinstated, the claim for failure to rehire cannot survive against Defendant Cobarrubias.

### 4. Punitive Damages

Defendant Monte Alto ISD argues that as a municipality, it is immune from punitive damages under 42 U.S.C. § 1983.[78] The Supreme Court has held "that a municipality is immune from punitive damages under 42 U.S.C. § 1983."[79] Independent school districts have been

---

[75] Dkt. Nos. 19 at 15-16, ¶¶ 27-30 & 20 at 12, ¶¶ 20-22.
[76] *Id.*
[77] *Id.*
[78] Dkt. No. 19 at 16-17, ¶ 31.
[79] *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981)

considered a municipality under § 1983.[80] Accordingly, Defendant Monte Alto ISD is immune from punitive damages here.

### 5. *Defendant Cobarrubias' Qualified Immunity*

While the Court need not address qualified immunity since no constitutional violation has been established, the Court briefly addresses it. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[81] "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"[82] "In other words, existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'"[83] "Put simply, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law.'"[84]

> Defendant Cobarrubias argues that
>
> [i]t would be unreasonable and irrational for Plaintiff to argue that a Superintendent would be prevented from taking remedial action when she is presented with undeniable evidence that District policies were violated because nearly two months prior she had been told that an election complaint had been filed. Further, the remedial action taken by Defendant Cobarrubias was limited to the duties surrounding the student athletes, which is exactly what the parent complaint dealt with. Defendant Cobarrubias contends that no reasonable official would have understood that removing a supplemental duty of Athletic Director from a coach who had given supplements to student athletes without parental consent in violation of district policy would have been a violation of constitutional law.

The Court will not again replicate the timeline of events in this matter. The parental complaint broke the causal chain and Defendant Cobarrubias was faced with the task of addressing that compliant. It was wholly reasonable for her to respond to the violation of District policy,

---

[80] *See Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d at 365.
[81] *Mullenix v. Luna*, 577 U.S. 7, 11, 136 S. Ct. 305, 308 (2015).
[82] *Id.*
[83] *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018).
[84] *Mullenix v. Luna*, 577 U.S. at 12.

especially given that the remedial action was limited to the duties related to the distribution of the supplements. The Court would once again note that Plaintiff admitted to his knowledge of the distribution of supplements to students without parental consent. Thus, the Court finds that qualified immunity shields Defendant Cobarrubias from liability.

### III. CONCLUSION AND HOLDING

For the foregoing reasons, the Court **GRANTS** Defendants' motions for summary judgment. Plaintiff cannot prove any of his claims as a matter of law. This case will terminate upon entry of final judgement.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 13th day of December 2023.

_____
Micaela Alvarez
Senior United States District Judge